IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JOCK WALKER,<br><br>    Plaintiff,<br><br>vs.<br><br>CONQUEST ENERGY, INC., PHILIP G. HAYDEN, and DAVID T. HOOPER,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No.  2:06CV872 DAK |

   This matter is before the court on Defendant David T. Hooper's ("Mr. Hooper") Motion to Dismiss for Lack of Personal Jurisdiction.  A hearing on the motion was held on July 2, 2007. At the hearing, Mr. Hooper appeared by telephone and represented himself.  Plaintiff Jock Walker ("Mr. Walker") was represented by J. Grant Walker.  Before the hearing, the court considered carefully the memoranda and other materials submitted by the parties.  Since taking the motion under advisement, the court has further considered the law and facts relating to the motion.  Now being fully advised, the court renders the following Memorandum Decision & Order.

   In his Complaint, Mr. Walker claims that Defendants Conquest Energy ("Conquest") and Phillip Hayden ("Mr. Hayden"), the President of Conquest, contacted him through the mail at his home in Orem, Utah, and solicited and made a securities offering to him on October 3, 2000. Pursuant to the offer made to him, Mr. Walker entered into a Repurchase Agreement in which

Mr. Walker agreed to transfer all of his rights in the oil and gas wells acquired from Conquest on or before December 31, 1997 in return for 1,176 shares of Gastar Explorations, Ltd.

According to Mr. Walker's allegations, as part of this transaction, Mr. Hooper, who resides in Tennessee, agreed to act as Escrow Agent and to deliver the 1,176 shares of Gastar to Mr. Walker.  Mr. Walker claims that despite repeated promises, and in breach of the Repurchase Agreement, the Defendants did not ever deliver to Mr. Walker the promised 1,176 shares of Gastar Exploration stock.   Mr. Walker claims that his interests in the oil and gas wells and his shares of stock were converted by Defendants for their own use.

Mr. Hooper has moved to dismiss, claiming that this court cannot exercise personal jurisdiction over him.  Mr. Hooper correctly points out that the Complaint is silent as to any involvement by Mr. Hooper in the solicitation and offering to Mr. Walker and that the Complaint fails to allege any contact by Mr. Hooper with Mr. Walker in this transaction–or any other transaction–and that it fails to allege any contact by Mr. Hooper with the State of Utah.

In addition, Mr. Hooper has filed an affidavit, asserting that he has never been to Utah, except for once when he was a child.  He has had no business or any other relationship with Mr. Walker, he has never solicited any contact with any individual or entity in Utah, he is not registered to do business in Utah, and he has never contacted Mr. Walker by telephone, mail, etc.

Mr. Walker, on the other hand, argues that this court does have jurisdiction because Mr. Hooper served as an escrow agent and as counsel for the issuer/offeror in this transaction.  Also, in his opposition memorandum, Mr. Walker asserts that he "believes" that Mr. Hooper drafted some or all of the solicitation and contractual documentation.  Mr. Walker also claims that Mr. Hooper has held the securities to be exchanged and was at least privy to the failure to transfer to

Mr. Walker the assets Mr. Walker paid for.

## DISCUSSION

When, as in this case, a district court considers a motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." " *OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1091 (10th Cir. 1998).  The court, however, finds that Mr. Walker has not made a prima facie showing of personal jurisdiction.

There is no contention that general jurisdiction exists, and therefore the relevant question is whether specific jurisdiction exists.  "[T]he evaluation of specific jurisdiction in Utah mandates a three-part inquiry: '(1) the defendant's acts or contacts must implicate Utah under the Utah long-arm statute; (2) a 'nexus' must exist between the plaintiff's claims and the defendant's acts or contacts; and (3) application of the Utah long-arm statute must satisfy the requirements of federal due process.' " *National Petroleum Mkt'g, Inc. v. Phoenix Fuel Co.,* 902 F. Supp. 1459, 1465 (D. Utah 1995) (quoting *Harnischfeger Eng'rs, Inc.,* 883 F. Supp. at 612-13); *see also Far West Capital, Inc.,* 46 F.3d at 1074.  The legislature has declared that the long-arm statute must be interpreted broadly "so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution." § 78-27-22; *see also Starways, Inc. v. Curry,* 980 P.2d 204, 206 (Utah 1999) ("We have held that the Utah long-arm statute 'must be extended to the fullest extent allowed by due process of law.' ") (quoting *Synergetics v. Marathon Ranching Co.,* 701 P.2d 1106, 1110 (Utah 1985)).  The Utah Supreme Court has stated that it "frequently make[s] a due process analysis

first because any set of circumstances that satisfies due process will also satisfy the long-arm statute." *SII MegaDiamond, Inc. v. American Superabrasives Corp.,* 969 P.2d 430, 433 (Utah 1998); *see also Far West Capital, Inc.,* 46 F.3d at 1075 (proceeding directly to constitutional analysis). Accordingly, the court will proceed to determine whether the exercise of personal jurisdiction over Mr. Hooper meets federal due process standards.

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471-72 (1985) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 319 (1945)); *see also OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1090 (10th Cir.1998). Accordingly, a "court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291 (1980) (quoting *International Shoe,* 326 U.S. at 316).

The "minimum contacts" necessary for specific personal jurisdiction are established " 'if the defendant has "purposefully directed" his activities at residents of the forum and the litigation results from alleged injuries that "arise out of or relate to" those activities.' " *OMI Holdings, Inc.,* 149 F.3d at 1091 (quoting *Burger King Corp.,* 471 U.S. at 472) (other quotations omitted). If the defendant's activities create sufficient minimum contacts, the court then considers "whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.' " *Id.* (quoting *Asahi Metal Indus. Co. v. Superior Court of California,* 480 U.S. 102, 113 (1987)).

The court therefore examines the quantity and quality of Mr. Hooper's contacts with Utah, including "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing," *Burger King Corp.,* 471 U.S. at 479, to determine whether the exercise of personal jurisdiction over Mr. Hooper comports with due process.

The only allegation is that Mr. Hooper agreed to serve as an escrow agent and–although not pleaded in the Complaint–that he may have acted as counsel to Convergys and Mr. Hayden. The court finds that those actions are insufficient to satisfy due process.

There is no suggestion that Mr. Hooper solicited Mr. Walker's business. "[S]olicitation is some evidence suggesting purposeful availment." *Far West Capital, Inc.,* 46 F.3d at 1076 (citing *Burger King Corp.,* 471 U.S. at 473.   Additionally, there is no suggestion that Mr. Hooper has ever sent mail or facsimiles to Mr. Walker or that he communicated with him in any way.   Thus, the court concludes that there are insufficient contacts with Utah.   There is no indication that Mr. Hooper "purposefully directed" his activities at a resident of Utah.   In addition, the exercise of personal jurisdiction over Mr. Hooper would offend "traditional notions of fair play and substantial justice." *Asahi Metal Industry Co.,* 480 U.S. at 113.

Accordingly, Defendant David T. Hooper's Motion to Dismiss for Lack of Personal Jurisdiction [docket # 11] is GRANTED, and he is DISMISSED from this action.

DATED this 30th day of July, 2007.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge